We are under advisement for disposition. Proceed to the next case, Donald Edmonds v. Workers' Compensation Comm'n, 5110118. Counsel, please. May it please the Court, my name is Bruce Wessore and I represent Donald Edmonds. This claim was filed under the O.D. Act. At arbitration, Mr. Edmonds was awarded 10%. The Commission affirmed the award. The award of the Commission was reversed by the Circuit Court based on collateral estoppel with a remand of the Commission and our decision consistent. So, Mr. Wessore, we have the same issue we had this morning and I take it back to the future. The position is the same. We have jurisdiction because it was nothing for the Commission to do but enter a ministerial act. The only difference is in this case, Consuelo stipulated it should be here. Okay. Now, and also they agree that the only issue we're talking about is collateral estoppel, which, to your great benefit, will reduce me to about six or seven minutes. And we sort of know the elements, but you get hit on them. It gets us down to one issue, it's a matter of law, and that kind of argument is better handled in the briefs, so I intend to leave most of it there with your permission. It's going to take a few minutes to highlight a couple of issues. Consuelo argues that applying collateral estoppel in this case promotes judicial economy, but that horse left the barn a long time ago. After the Director's proposed decision at the federal level, the claim was filed, four reports were written, two depositions were taken, it went through arbitration, and went through the Commission. Stopping the case at the circuit court doesn't promote any judicial economy. Second, the decision in the federal claim was whether the claimant had a respiratory disease that was totally disabling. Dollar one would not be awarded unless the claimant met both of those criteria. There's no money for second place in federal black lump, it takes both. Trying to apply collateral estoppel provides two problems. At level one, there's the question of whether the screener at the first stage of the federal claim, knowing for certain that the objective pulmonary function testing means the claimant cannot win, gave the question of whether pneumoconiosis was present as good a look as it deserved. Now this question wouldn't come up in a state case, because if there's pneumoconiosis in a state case, there's going to be some kind of an award. The Director in the federal claim was just filling in a box that was irrelevant to the outcome. Third, respondents say the claimant should have withdrawn and avoided an adverse decision. The problem here is how much sophistication should the court assign to the claimant? He was unrepresented by counsel. At that point in the federal claim, he doesn't even know he's going to file a state claim, and he doesn't know what withdrawal is. And this is particularly problematic when what the minor gets from the Department of Labor at this juncture of the claim doesn't spell out all of his options. It informs him of his right to appeal. What the Department of Labor told him was that he had the right to ask for modification of the decision within a year if he had to change his condition. And this brings up the argument about the alternative grounds for denial. If the existence of pneumoconiosis were the controlling issue in the federal claim, the Director would have quit writing after he said there wasn't any pneumoconiosis. In his federal claim, regardless of whether there was pneumoconiosis by x-ray or not, he couldn't win without having a totally disabling condition, and the Sandbox exam proved he didn't. Consolidate didn't even have to develop any evidence. And even if he had appealed and had gotten positive B-readings from other B-readings, his federal claim would still have been denied. And that gets to the incentive question. When there are two separate issues that a claimant has to prove, there's no use pursuing the first one. And the second one is going to keep you from winning the first one regardless of how much more evidence that you develop. And again, that's the difference between the federal and the Illinois Act. Under the Illinois Act, a positive x-ray combined with a normal breathing test will put you in line for a partial disability award. That award is not available under the federal act. Under a federal law, if you have a positive x-ray, normal breathing test, you're out. There is no incentive to go on. And you can always come back later in that federal claim if there's been a material change in your condition. In fact, filing the appeal by this man at that time would have been a waste of judicial resources, a waste of personal financial resources that couldn't end up with anything but a denial. As to the procedure, what had been done at the federal level in this case was not a judicial hearing. And Consal's analogy to the role of the director and the ALJ in the federal system to the roles of the arbitrator and the commission under the Illinois Work Compact just doesn't make sense. Under the federal act, it's the position of the Department of Labor that the ALJ shall not consider the director's order. But under Illinois law, the commission may adopt and hold in part the decision of the arbitrator as a decision of the commission. Unlike the director's decision in the federal system, the arbitrator's decision has legal effect in Illinois Work Comp and can be relied on by the courts. In Illinois, the commission can weigh the evidence and come to a different conclusion than the arbitrator.  In the federal system, the ALJ does not weigh the evidence of the director and it can receive new evidence later. In Illinois, the case is totally developed at the arbitration level. That includes the hearing with all the other characteristics of the judicial procedure. Finality is another difference between the two acts. In the federal claim, you can always come back. In fact, in the federal claim, a widow can file a claim even if there's been an unsuccessful living minor claim. But there's nothing more final than a denial in an Illinois black lung claim. In Illinois, when you put everything you've got on the table and you get a denial, it's over. For you and for your widow, it wouldn't make any difference if the coal company stipulated that your death was due strictly to respiratory failure from a disease caused completely by your coal mine exposure. If there's a denial of a living minor claim in your background, it will never be a state widow's claim. It wouldn't make any difference if there was an autopsy to prove that complicated pneumoconiosis was the sole cause of death. The claim died with the living minor denial. Consolidate also says Mr. Edmonds could have hired a lawyer for his federal appeal. Why? And if he found a lawyer to take that case, that would be enough to prove he shouldn't hire that lawyer. And last, there should be a balancing of the practical realities of the case. Collateral estoppel should not be applied unless it's clear that no unfairness results to the party being estoppel. So in practical terms, here's what happened to Mr. Edmonds in the federal court. He filed a claim without a lawyer. He took the black lung exam from a doctor whose name had been given to him on a list by the Department of Labor. The doctor believed he had pneumoconiosis. But his opinion didn't count because it wasn't on the form that the federal people wanted. So the x-ray was sent away to a lead reader. Mr. Edmonds never met. It was read negative, and the director found against him. Consolidate didn't develop any evidence. There was no hearing. There was no argument. And the ALJ is not supposed to rely on the director's findings. Collateral estoppel shouldn't apply, and for these reasons, as well as those in the briefs, I ask that this court reverse the circuit court's order and reinstate the commission of law. Thank you. Thank you. Counsel, please. Good afternoon, Your Honors. My name is Cheryl McBride. I'm here on behalf of the Consolidation Poll Company. Thinking back to the original issue in this with regard to collateral estoppel is there are minimum threshold requirements, and that was why this was all brought up in the first place. And those requirements are the issue decided in the prior adjudication is identical with the one presented in the suiting question. In this case, the only disease diagnosed by the commission was co-workers' pneumoconiosis. Pursuant to our statute under the ODA, you have to prove disablement within two years of your last date of exposure. He left in 1999. He files a federal black lung claim in June of 2002, and the DOL, the Department of Labor, specifically charged with determining if these people have black lung, which now includes clinical and legal pneumoconiosis, which means you can see it on the film and give it to somebody, or you can base it on obstructive constrictive conditions. Okay? We have a major definition for pneumoconiosis. DOL looked at it and said, no, you don't have it. But I tell you what, we're going to give you 60 days to put in some evidence here that might show that you have it. Did he put anything in? No. They issue a proposed decision in order that specifically finds that Mr. Edmonds did not have co-workers' pneumoconiosis three years after he left the mine. So, we now have a commission that says, oh, he was disabled by co-workers' pneumoconiosis two years after he left the mine. How can that be? The Department of Labor, which is the organization specifically set forth, they are the first group of people that looks at this. These claimants pick their doctors, who they want to go see. And Mr. Brazor makes the comment they ignore Dr. Sanjog. He's not a bee reader. They had a board-certified radiologist look at the film to see if there was anything on it. And Dr. Gatlis said, no, it's negative. So, here we are with this decision from the DOL that they're now asking us to ignore. So, we'll move on to the second problem. Maybe we can get rid of it that way. There was a final judgment on the merits and the prior adjudication. That there was, it was a proposed decision in order. He had 30 days to appeal it. Now, they've said, well, why would he appeal it? He's still going to lose because he's not disabled. It's not the point. It's that finding. We're not saying he had to appeal it. We are simply saying they made this finding. And that finding was not appealed. And three, the party against whom Estopolis asserted was a party or in privity with a party in the prior adjudication. That'd be us. That's all. We were in both of them. Same thing. Now, what you have to look at is if you turn this around, you turn around and say, you know what? He gets this DOL exam and they find that he's got co-workers' pneumoconiosis and it's two, three years after he left the mine. Guess what happens to me when I come back here? And I say, oh, well, he didn't meet the 1F rule because there's no evidence because this guy was the only one that saw him was five years out. Every person who looks at this case is going to say, hey, the DOL found that he had pneumoconiosis. He met the two-year requirement. So why isn't it going the other way? And that is essentially what we get into here. This is a man who took it upon himself to say, I want the federal black lung system to tell me if I have co-workers' pneumoconiosis, if it arises from my job, if it's totally disabling, and if the total disablement is due to pneumoconiosis. You have to prove all four prongs. And where he says, oh, well, you hit the boxes. It's the government. Everything is a box in the government. They pick which ones you make and which ones you don't. Speaking of the boxes, does this federal black lung proceeding, is that analogous to some type of a full and fair hearing or adjudication on the merits? Are there live witnesses? Is there an examination? Are there arguments? Any of the trappings of what we would call a proceeding as we know it, or is it basically an administrative looking at paperwork? It is a claimant going in, requesting, they file an application for benefits. They send them a list with the physician. They go to the physicians. They are examined. The physician fills out a report. The chest X-rays from every film is then forwarded to either a board-certified radiologist or a B-reader for interpretation. The data is returned to the DOL. When the DOL looks at the data that comes from this examination and says, based on this evidence of record, you are either entitled or not entitled. It's a matter of looking at paperwork, essentially. Yeah, essentially it's the same as what the physician does. There's really no hearing adjudication as it were as we're used to. Where's the hearing? Where's the adjudication? When you move from the schedule from the submission of additional evidence, the other side and the claimant then get to produce an evidence. You can take deposition testimony of a claimant during that time period and submit it into evidence. You can submit your own expert's opinions at that time. You can call other people from the mine. Call or just send in the evidence. Is there some kind of a proceeding where there's a hearing in some kind of a place? No, there's never a hearing. Everything has to be set forth in depositions. It would have to be a transcript. How do you cross-examine your opponent's witnesses? You're taking their deposition. You would just cross-examine them the same way I would cross-examine doctors. You take the deposition. You file the deposition. Is that the idea? I don't understand the question. You file the deposition. Is that what happens? You take the deposition of somebody, and both parties get the opportunity to examine the expert during that time. So, yes, you would be able to cross-examine. How does the trier effect then determine credibility having never observed the witness's testimony? They do, Your Honor. They have medical records, and they look at what the people say to their doctors. Like in this case where he goes in and says, I have no shortness of breath except to one doctor. Well, no, two. He said it to the DOL examiner. Other than that, he goes and tells his treating doctor, no, I have no shortness of breath. I'm swimming in my pool. I'm bush mowing my lawn. That matters to the DOL, and that does affect credibility there. And whereas, no, we don't have a full hearing where we sit there at that level, you have one at the next level if you're disappointed or you don't like the fact that they denied you benefits. And we have people who appeal them, whether it's just on pneumoconiosis or total disability. They can all appeal. It's not limited. And what do they get when they appeal? Do they get a trial de novo? Yes, they do. It's just like going to the commission. They get another shot at it. Or the ALJ can simply take all of the evidence that was already in the record before the DOL and have nothing else submitted and issue a ruling. I mean, they don't even have to have a hearing. They can waive their hearings if they're so inclined. And then it is just a ruling on the record. And I guess the problem I have with this, Your Honors, is that if our statute requires someone to prove disablement within two years of their last date of exposure, and this guy goes and gets a DOL exam with the specific information you're going to get, whether he's totally disabled or not, is does he or does he not have full workers' pneumoconiosis? That is the first thing that they determine in these cases. And in this case, they said he did not. And that is what we are asking this Court to find collaterally estops Mr. Edmonds, who requested that same federal black lung exam from proceeding with his state black lung. Even though, in reality, it's whether doctors diagnosed him. I'm sorry? Even though, in reality, it's whether doctors diagnosed him. Well, Dr. Sandabi is not a B-reader. Well, then he's a B-reader, right? Dr. Alexander didn't look at the DOL, though. I understand that. But, I mean, we have been here on this issue before, but never one that was this cut and dry. And I can't cite any of the other cases, because they're all Rule 23. So we're charged with dealing with this issue head-on, right? Well, to me, it's not that big of a leap. I mean, like I said, if the shoe was on the other foot and he went to the DOL and they found that he had pneumoconiosis, everybody would accept it. Why are we not going to accept it when that's the same group charged to find it this time and didn't? Well, we don't know that. We'd still have to apply the same law, wouldn't we? We did. I lost. With that said, it should go the other way as well. And that's the point here. It's like they can find pneumoconiosis without finding total disability, and this court has accepted that finding before. So for them to not find pneumoconiosis on a 1F problem, which is 2 years, and we're now 3 years out, that to me collaterally stops him from saying, I was disabled 2 years after I left the mine, when he personally sought that opinion, and that opinion said he did not have it. And it's the same parties. Any other questions? Just two things. There's a lot of talk about what could happen next. Depositions could be taken. They're just working. All we have is the exam. Got sent to that d-reader. The director turned something in. So we're limited really to what happened here. We're going to apply collateral stop with this man. And the other thing, there was speculation about what would happen if there was a positive reading. And I remember not too long, Mrs. Hoffman, after you got on the court we had a number of years ago, a collateral stop argument, and you looked at me and said, well, why don't you bring it up when it's in your favor? I said, because it's wrong. I wouldn't do it. And in answer to what Ms. Itrovaya said, you have never seen us do it. Thank you. Thank you, counsel. The court will take the matter under advisory for disposition. Stand recess until 9 o'clock in the morning.